Emes Unemployment Compensation Case.
Sylvania Electric Products, Inc., Appellant, *v.*
Unemployment Compensation Board of Review.

Argued June 17, 1960. Before RHODES, P. J., GUN-
THER, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY,
JJ. (WRIGHT, J., absent).

*O. William Vanderlin,* with him *McNerney, Page & Vanderlin,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Anne X. Alpern,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY MONTGOMERY, J., September 16, 1960:

This is an appeal by the employer, Sylvania Electric Products, Inc., from the decision of the Unemployment Compensation Board of Review refusing to allow it relief from charges under §302(f) of the Pennsylvania Unemployment Compensation Law (43 P.S. §782(f)) on account of compensation paid to Marie Andros Emes, its employee.

Mrs. Emes had been employed by appellant as a tube tester from January 9, 1957, until October 5, 1957, when she requested and received a pregnancy leave of absence for 18 months expiring April 5, 1959. On April 18, 1958, she notified her employer that she was again available for work but was advised that there was no work available and that her name would be placed on the recall list in accordance with her seniority. She then applied for unemployment compensation and her claims were approved for the week ending April 20, 1958, and for subsequent weeks. No appeal was taken by the employer from these allowances.

On August 28, 1958, Mrs. Emes was recalled to work on the third shift, but she declined to return because "her husband did not want her to work the third shift because of the necessity of staying home with her children." Her one child was then 7 months old and her

other was 28 months. The Bureau approved her claim for compensation for the week of August 31, 1958, and stated, "Claimant was recalled by her last employer on August 28, 1958, for work on third trick. Claimant was unable to accept this trick due to home obligations. However, she is able and available for first trick or second trick. Claimant has good cause for not accepting third trick work and is therefore eligible for benefits." The employer did not file an appeal from the allowance of this claim but did file a timely request under §302(f) for relief from the charge of same against its reserve account and assigned as reason therefor that employe "Requested and was granted an excused absence for 18 months due to pregnancy. Reapplied 4/8/58, no work available. Placed on recall list. Recalled 8/28/58 for third shift work. Unable to accept due to home obligations."

Upon denial of its application for relief by the Bureau, the employer duly appealed and its application was subsequently refused by the Referee and Board. This appeal followed.

Section 302(f), which provides for the crediting and debiting of an employer's account with contributions thereto and benefits paid therefrom, contains the following provision: "Provided, That if the department finds that such individual was separated from his most recent work for such employer due to being discharged for willful misconduct connected with such work, or due to his voluntarily leaving such work without good cause attributable to his employment, thereafter no compensation paid to such individual with respect to any week of unemployment occurring subsequent to such separation . . . shall be charged to such employer's account. . . ."

In denying the relief applied for, the Board found, "Since the claimant's separation from her most recent

work was due to failure to accept a recall to work, the employer's request for relief from charges does not fall within the aforesaid relieving provisions of section 302(f) of the Law. . . ."

In resolving this matter two additional facts must be considered. The first is the status of the employe after the date of her recall. This is described by Frank Bailey, the representative of the employer, as follows: "As of this date [December 18, 1958], the claimant is considered an employe of the company. She is current on the recall list. However, when she refused to return to work on August 28, she waived her rights to her position on the recall list and was placed, in accordance with her seniority, among a group of employes who have also waived their rights on the seniority list."

The second fact is Regulation 19 adopted by the Unemployment Compensation authorities under the provision of §201(a) of the Act (43 P.S. §761) as an aid and guide in interpreting the provisions of §302(f). It provides, *inter alia*: "An employee shall be deemed to have left work if he walked off his job or abandoned his position, or refused or failed to continue in his employment; Provided, that an employee who has been laid off for a period of 14 or more days shall be presumed not to have left work if he refuses or fails to resume work with the employer by whom he was laid off."

The need for Regulation 19 is obvious since the definition of the phrase "left work" or "leaving such work" might vary from the absence of an employee from his desk or machine for a few minutes to a final and complete severance of the relationship of employer and employe. In the present case it was an intermediate situation, the employe being unable to assume the performance of her regular duties at a particular time, the third trick, but nevertheless retaining her status as

an employe and available for work on the other two tricks.

Regulation 19 defines the term, as intended by §302(f), as a complete severance of the relationship. The use of the words and phrases abandonment, failing to continue in his employment, and walking off the job indicates finality. This, we think, is the proper definition. Otherwise, there would be no reason for §302(f). Its purpose is to relieve an employer from charges after an employe terminates his association with it by reason of discharge for cause, resignation, or by the act of the Governor in declaring an emergency to exist in time of disaster.

An employe may be entitled to benefits for unemployment due to causes unrelated to his employment after the reationship with his last employer has been terminated if she or he has a cause of a necessitous and compelling nature: *Sturdevant Unemployment Compensation Case*, 158 Pa. Superior Ct. 548, 45 A. 2d 898; *Edwards Unemployment Compensation Case*, 184 Pa. Superior Ct. 262, 132 A. 2d 897; but after final termination of the relationship it would appear unreasonable to charge the last employer with benefits thereafter accruing when that employer is not responsible for the unemployment upon which they are predicated. However, where the relationship of employer and employe still continues, as in this case, and the employe is subject to recall, the reason for relieving the employer of the charges is not so compelling. It appears to have been the intention of the legislature to relieve only in cases of clear and substantial inequity and not in those where the inequity was slight or not clearly defined.

In the *Sturdevant* case, supra, this Court, speaking through Judge RENO, discussed the merit or experience rating system in relation to the liability of em-

ployers to make contributions to the unemployment fund and said (p. 563) : "It must be recognized, too, that the employer's individual employment record is not the sole measure of his contribution. The rate is a compound of the individual employer's record, the record of all other employers of covered employment in the State, and the safety factor which assures an adequate balance in the fund." This indicates that some balancing of individual inequities among all employers results in an equitable assumption of the burden imposed by the system.

We are of the opinion that appellant's claim under §302(f) constitutes a claim for an exemption since its tax contribution is determined in part on the charges against its reserve account. This compels a strict construction to be placed upon §302(f), *Fischer v. Pittsburgh*, 383 Pa. 138, 118 A. 2d 157; *Commonwealth v. McCarthy*, 332 Pa. 465, 3 A. 2d 367; Act of 1937, May 28, P. L. 1019, article IV, §58(5), 46 P.S. 558(5), which leads us to the same conclusion reached by the Board, that appellant has not brought itself within the provisions of that section to entitle it to relief since the employe did not leave her work in the manner intended by that section and Regulation 19.

In view of the foregoing, we deem it unnecessary to discuss the matter of "suitability of work" to which a large part of appellant's argument is devoted, or any other matters relating to the employe's eligibility for benefits after August 28, 1958. So long as she remained an employe of appellant, it was not entitled to relief under §302(f).

The decision to allow benefits, unappealed, becomes final and not subject to collateral attack. *Oravec Unemployment Compensation Case*, 171 Pa. Superior Ct. 491, 90 A. 2d 269; *Gollier Unemployment Compensation Case*, 162 Pa. Superior Ct. 136, 56 A. 2d 351. Appellant indicates in its brief that Mrs. Emes declined to

return when recalled on March 19, 1959, to work the first shift and also on April 5, 1959, when recalled to work the second shift. Both of these incidents were subsequent to the time the present matter arose. Possibly her actions may have rendered her ineligible for benefits after those dates. However, they are not facts to be considered in the present proceeding and we are not deciding that question.

Decision affirmed.